# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CATHERINE JACKSON, *et al.*, individually
and on behalf of all others similarly situated

                              *Plaintiffs*,

*v.*

ROBERT F. KENNEDY, JR., in his official
capacity as Secretary of Health and Human
Services, *et al.*,

                              *Defendants*.

Civil Action No. 1:25-cv-1750-BAH

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 2

I.    The CSRA's exclusive remedy scheme forecloses district court jurisdiction. ................... 2

        1.    *Elgin* provides the proper framework for assessing CSRA preclusion............. 3

        2.    As applied in *Elgin*, the *Thunder Basin* factors foreclose jurisdiction. .......... 12

    B.    D.C. Circuit precedent does not authorize Plaintiffs to use the Privacy Act
        as an end-run around the CSRA's exclusive remedy scheme............................... 14

    C.    Plaintiffs' repeal-by-implication analysis is irrelevant. ........................................ 17

II.    In the alternative, Plaintiffs fail to state claims under the Privacy Act............................ 20

    A.    Plaintiffs' allegations do not establish a causal link between any Privacy
        Act violation and Plaintiffs' removals in light of materials subject to
        judicial notice......................................................................................................... 20

    B.    Plaintiffs do not plausibly allege intentional or willful violations of the
        Privacy Act............................................................................................................. 23

III.    All individual and non-HHS Defendants must be dismissed............................................ 24

IV.    The declaratory relief claim and class allegations cannot salvage this action.................. 25

i

## **TABLE OF AUTHORITIES**

**Cases**

*Abdelfattah v. U.S. Dep't of Homeland Sec.*,
   787 F.3d 524 (D.C. Cir. 2015) ............................................................. 25

*Abramowitz v. Lake*,
   No. 1:25-CV-887-RCL, 2025 WL 2480354 (D.D.C. Aug. 28, 2025) .................................... 12

*Albright v. United States*,
   732 F.2d 181 (D.C. Cir. 1984) ............................................................. 15

*Alder v. Tennessee Valley Auth.*,
   43 F. App'x 952 (6th Cir. 2002) ........................................................... 10

*\*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*,
   929 F.3d 748 (D.C. Cir. 2019) ......................................................... 1, 12

*Arab v. Blinken*,
   600 F. Supp. 3d 59 (D.D.C. 2022) ......................................................... 21

*Ashbourne v. Hansberry*,
   No. CV 12-1153(BAH), 2014 WL 12666716 (D.D.C. Sept. 3, 2014) ................................ 17

*Axon Enter., Inc. v. FTC*,
   598 U.S. 175 (2023) ............................................................. 13, 14, 18

*Baker v. Islamic Republic of Iran*,
   No. CV 22-2765(BAH), 2025 WL 2480075 (D.D.C. Aug. 28, 2025) ............................... 21

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................... 22

*Cannon v. District of Columbia*,
   717 F.3d 200 (D.C. Cir. 2013) ........................................................... 21

*Clark v. Rameker*,
   573 U.S. 122 (2014) ...................................................................... 6

*Da Costa v. Immigr. Inv. Program Off.*,
   643 F. Supp. 3d 1 (D.D.C. 2022) ......................................................... 21

*Dastagir v. Blinken*,
   557 F. Supp. 3d 160 (D.D.C. 2021) ....................................................... 21

*Dellums v. United States Nuclear Regulatory Comm'n*,
   863 F.2d 968 (D.C. Cir. 1988) ........................................................... 17

*Deters v. U.S. Parole Comm'n*,
   85 F.3d 655 (D.C. Cir. 1996) ............................................................. 25

*Doe v. Chao*,
540 U.S. 614 (2004) ............................................................................................. 8

*Doe v. F.D.I.C.*,
545 F. App'x 6 (2d Cir. 2013) ............................................................................ 17

*Doe P v. Goss*,
2007 WL 106523 (D.D.C. Jan. 12, 2007) ............................................................ 17

*\*Elgin v. Dep't of the Treasury*,
567 U.S. 1 (2012) ......................................................................................... *passim*

*Feldman v. C.I.A.*,
797 F. Supp. 2d 29 (D.D.C. 2011) ...................................................................... 17

*Free Enter. Fund v. Public Co. Accounting Oversight Bd.*,
561 U.S. 477 (2010) ............................................................................................ 18

*Gill v. Dep't of Def.*,
No. DC-0752-00-0459-I-1, 2002 WL 1473163 (M.S.P.B. July 3, 2002) ............. 10

*Houlihan v. OPM*,
909 F.2d 383 (9th Cir. 1990) ........................................................................... 4, 7

*Hubbard v. U.S. E.P.A. Adm'r*,
809 F.2d 1 (D.C. Cir. 1986) ..................................................... 14, 15, 16, 19, 20

*Jingjing Liu v. Mayorkas*,
2021 WL 2115209 (D.D.C. May 25, 2021) ......................................................... 21

*Kleiman v. Dep't of Energy*,
956 F.2d 335 (D.C. Cir. 1992) ................................................... 14, 16, 19, 20

*Knight v. Dep't of Def.*,
332 F.3d 1362 (Fed. Cir. 2003) ......................................................................... 11

*Lacson v. DHS*,
726 F.3d 170 (D.C. Cir. 2013) ................................................................. 8, 9, 18

*Latif v. Obama*,
666 F.3d 746 (D.C. Cir. 2011) ........................................................................... 22

*Lucas v. Am. Fed'n of Gov't Emps.*,
151 F.4th 370 (D.C. Cir. 2025) ................................................................. 6, 7, 8

*Manivannan v. United States Dep't of Energy*,
42 F.4th 163 (3d Cir. 2022) ........................................................................ 3, 17

*Martinez v. Bureau of Prisons*,
444 F.3d 620 (D.C. Cir. 2006) .................................................................. 24, 25

*Miriyeva v. U.S. Citizenship & Immigr. Servs.*,
  436 F. Supp. 3d 170 (D.D.C. 2019) ........................................... 11

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
  583 U.S. 109 (2018) .............................................................. 6

*\*Nat'l Treasury Emps. Union v. Vought*,
  149 F.4th 762 (D.C. Cir. 2025) ........................................... 9, 20

*Paige v. DEA*,
  665 F.3d 1355 (D.C. Cir. 2012) .............................................. 25

*Pharm. Rsch. & Mfrs. of Am. v. HHS*,
  43 F. Supp. 3d 28 (D.D.C. 2014) ............................................ 21

*POM Wonderful LLC v. Coca-Cola Co.*,
  573 U.S. 102 (2014) ............................................................ 19

*Pulsifer v. United States*,
  601 U.S. 124 (2024) ............................................................. 6

*Smith v. Dep't of Transp.*,
  No. AT 0752 050901 I 2, 2007 WL 1641891 (M.S.P.B. June 5, 2007) ................ 10

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ............................................................. 17

*Sterling v. United States*,
  826 F. Supp. 570 (D.D.C. 1993) ........................................... 23, 24

*Sussman v. U.S. Marshals Serv.*,
  494 F.3d 1106 (D.C. Cir. 2007) ........................................... 22, 23

*Thornhill v. Dep't of Army*,
  No. DC07529010253, 1991 WL 205441 (M.S.P.B. Oct. 7, 1991) ....................... 10

*\*Thunder Basin Coal Co. v. Reich*,
  510 U.S. 220 (1994) ....................................................... 1, 13, 18

*\*Turner v. U.S. Agency for Glob. Media*,
  502 F. Supp. 3d 333 (D.D.C. 2020) ............................................. 3

*\*U.S. v. Fausto*,
  484 U.S. 439 (1988) ................................................. 6, 9, 14, 15, 18

*United States ex rel. Totten v. Bombardier Corp.*,
  380 F.3d 488 (D.C. Cir. 2004) ................................................ 25

*Young v. USPS*,
  No. AT 0752 090117 C 1, 2010 WL 2016529 (M.S.P.B. May 21, 2010) ............... 10

iv

**Statutes**

5 U.S.C. § 552a ................................................................................ 4, 16, 23, 25

5 U.S.C. § 1204 ........................................................................................ 4, 11

5 U.S.C. § 2302 .............................................................................................. 5

5 U.S.C. § 7511 .......................................................................................... 3, 9

5 U.S.C. § 7701 .......................................................................................... 4, 9

5 U.S.C. § 7702 .............................................................................................. 2

5 U.S.C. § 7703 ...................................................................................... 5, 10, 11

28 U.S.C. § 1331 ........................................................................................ 4, 16

29 U.S.C. § 216 .............................................................................................. 5

29 U.S.C. § 633a ............................................................................................ 5

29 U.S.C. § 794a ............................................................................................ 5

42 U.S.C. § 1983 ........................................................................................... 24

42 U.S.C. § 2000e-5 ........................................................................................ 5

49 U.S.C. § 46110 ........................................................................................... 8

**Regulations**

5 C.F.R. § 351.901 ..................................................................................... 4, 9, 10

**Other**

CBS News, *RFK Jr.'s First Network TV Interview as HHS Secretary*,
   https://www.youtube.com/watch?v=o2U0csKvqMY at 17:32 (Apr. 9, 2025) ...................... 24

## INTRODUCTION

This Court lacks subject-matter jurisdiction over Plaintiffs' challenges to personnel decisions that fall within the exclusive scheme that Congress created through the Civil Service Reform Act of 1978 (CSRA). In *Elgin v. Dep't of the Treasury*, the Supreme Court squarely held that, "[g]iven the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions, it is fairly discernible that Congress intended to deny such employees an additional avenue of review in district court." 567 U.S. 1, 11-12 (2012). Plaintiffs do not (and cannot) dispute that their claims challenge adverse employment actions. Nor can they dispute that they may obtain review of those employment actions before the Merit Systems Protection Board (MSPB) through the CSRA. That should be the end of the matter.

Plaintiffs nonetheless argue that they may evade the CSRA's exclusive scheme because they challenge adverse personnel decisions under a different, pre-existing statute—the Privacy Act. But the Supreme Court in *Elgin* squarely rejected the argument that the scope of the CSRA's exclusive scheme turns on the source of law invoked. To the contrary, "competitive service employees, who *are* given review rights" under the CSRA, "cannot expand these rights by resort to judicial review outside of the CSRA scheme." 567 U.S. at 11 (cleaned up). Plaintiffs further assert that they will be unable to bring standalone Privacy Act claims for damages through the CSRA review scheme. But under binding D.C. Circuit precedent, Plaintiffs are "required to raise their challenges through the" exclusive CSRA "scheme even if that made it *impossible* to obtain particular forms of review or relief." *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748, 756 (D.C. Cir. 2019) (*AFGE*). Plaintiffs also invoke decades-old circuit caselaw that predates *Elgin* and its predecessor, *Thunder Basin Coal Co. v. Reich*, 510 U.S. 220 (1994), to argue that aggrieved employees may use the Privacy Act as an end-run around the CSRA's exclusive review scheme. Plaintiffs' dated authorities cannot countermand the Supreme Court's clear instruction.

Finally, Plaintiffs' repeal-by-implication analysis misses the mark. That doctrine is not relevant to administrative channeling, and the Privacy Act remains available for challenges to actual invasions of privacy, rather than the challenges to adverse personnel decisions brought here.

In the alternative, Plaintiffs fail to state a claim because they have not plausibly alleged a causal connection between the alleged Privacy Act violations and their removals in light of materials subject to judicial notice. Plaintiffs also fail to plausibly allege that Defendants intentionally or willfully violated the Privacy Act, as required to obtain damages.

In all events, every Defendant other than the Department of Health and Human Services (HHS) and its components should be dismissed because settled D.C. Circuit precedent prohibits Privacy Act claims against individuals, even in their official capacity, and because Plaintiffs do not plausibly allege that any other agency's violations of the Privacy Act caused their removals.

## ARGUMENT

I.    **The CSRA's exclusive remedy scheme forecloses district court jurisdiction.**

Plaintiffs do not dispute that their Privacy Act claims challenge adverse personnel decisions and therefore require this Court to assess the legality of Plaintiffs' separations from HHS. *See* Defendants' Motion to Dismiss ("Mot.") at 15-16, ECF No. 12-1. But *Elgin* unequivocally held that the CSRA provides the "exclusive means" for vindicating injuries that arise from "personnel action taken against federal employees," subject to narrow, enumerated exceptions. 567 U.S. at 5, 8. Indeed, as the Supreme Court emphasized, the CSRA expressly carved out certain pre-existing statutory claims from its exclusive remedy scheme—specifically, when "a covered employee 'alleges that a basis for the action was discrimination' prohibited by enumerated federal employment laws.'" *Id.* at 13 (quoting 5 U.S.C. § 7702(a)(1)(B)). Congress declined to include Privacy Act challenges to adverse personnel decisions in that carve-out. "That Congress

declined to include an exemption" for such challenges "indicates that Congress intended no such exception." *Id.* This Court therefore lacks statutory subject-matter jurisdiction.

### 1. *Elgin* provides the proper framework for assessing CSRA preclusion.

The first and only question this Court need answer is whether *Elgin* controls this case. Despite Plaintiffs' efforts (*see* Opposition ("Opp.") at 17-22, ECF No. 14) to distinguish it, *Elgin* requires dismissal of Plaintiffs' claims for lack of statutory subject-matter jurisdiction.

a.  To start, *Elgin* rejected the core of Plaintiffs' position advanced here—that CSRA preclusion turns on the source of law under which a claim is brought.  Like Plaintiffs here, the aggrieved former federal employees in *Elgin* argued that the CSRA's review scheme did not foreclose district court jurisdiction because their claim (a constitutional challenge to the Military Selective Service Act) was not brought under the CSRA, but rather under some other source of law.  *See* 567 U.S. at 7-8.  The Court rejected that argument, looking beyond the constitutional label that plaintiffs appended to their claim to hold that "[t]he availability of administrative and judicial review under the CSRA generally turns on the type of civil service employee and adverse employment action at issue."  567 U.S. at 12.  In other words, the Court explained, "[n]othing in the CSRA's text suggests that its exclusive review scheme is inapplicable simply because a covered employee challenges a covered action on the ground that the statute authorizing the action is unconstitutional." *Id.* at 13; *see also Manivannan v. Dep't of Energy*, 42 F.4th 163, 172 (3d Cir. 2022) ("*Elgin* . . . explained that whether the CSRA prevents a federal action turns on 'the type of the employee *and* the challenged employment action.' If the employee's federal suit is, 'at bottom,' challenging an employment action within the [MSPB]'s jurisdiction, then it must proceed through the review process provided in the CSRA.") (citations omitted).

That analysis controls here.  Plaintiffs do not dispute that they are covered employees, *see* 5 U.S.C. § 7511(a)(1) (defining "employees"), challenging covered adverse employment actions,

*see* 5 C.F.R. § 351.901 ("An employee who has been furloughed for more than 30 days, separated, or demoted by a reduction in force action may appeal to the [MSPB].").  Nor do Plaintiffs dispute that the MSPB can fully remedy their harm through reinstatement, backpay, and attorney's fees. *See* 5 U.S.C. §§ 1204(a)(2), 7701(g); Mot. 15-16.  If anything, *Elgin* applies with even greater force here because Plaintiffs bring statutory claims, rather than constitutional ones.  *See Turner v. U.S. Agency for Glob. Media*, 502 F. Supp. 3d 333, 366 (D.D.C. 2020) (Howell, C.J.) ("[T]he CSRA plainly precludes judicial review of *statutory* claims by covered employees related to their employment.") (emphasis added).

The Supreme Court's reasoning in *Elgin* eliminates any doubt as to that case's applicability.  *Elgin* emphasized that the "purpose of the CSRA" is "to replace an outdated patchwork of statutes and rules that afforded employees the right to challenge employing agency actions in district courts across the country," creating "wasteful and irrational" "variations."  567 U.S. at 13-14.  "The CSRA's objective of creating an integrated scheme of review would be seriously undermined if . . . a covered employee could challenge a covered employment action first in a district court, and then again in one of the courts of appeals, simply by alleging that the statutory authorization for such action is unconstitutional."  *Id.* at 14.  That same logic forecloses jurisdiction here:  if Plaintiffs' claims proceed, any former federal employee could challenge his or her removal in federal district court merely by claiming that removal was based on some inaccurate or incomplete record in violation of the Privacy Act.  *See Houlihan v. OPM*, 909 F.2d 383, 385 (9th Cir. 1990) (allowing circumvention of the CSRA with claims under the Privacy Act "'would open the back door to judicial review to perhaps an overwhelming number' of CSRA claims").  Such actions would eviscerate the integrated scheme for review of adverse personnel decisions that Congress created through the CSRA.  *Elgin* therefore forecloses Plaintiffs' claims.

4

b.  Plaintiffs respond (Opp. 20) that *Elgin* does not apply because the plaintiffs in that case asserted general federal-question jurisdiction under 28 U.S.C. § 1331, and the Privacy Act contains its own grant of jurisdiction.  Congress evidently disagreed, as it expressly carved out from the CSRA's exclusive remedy scheme employment-related claims under certain federal statutes that also contain specific grants of jurisdiction, but did not do so for the Privacy Act.

Specifically, "[w]hen a covered employee 'alleges that a basis for the action was discrimination' prohibited by enumerated federal employment laws," Congress authorized a covered employee challenging a covered employment action to obtain judicial review in federal district court.  *Elgin*, 567 U.S. at 13 (citing 5 U.S.C. § 7703(b)(2)).  Moreover, Title I of the CSRA authorizes employees to concurrently bring claims in federal district court under Section 717 of the Civil Rights of Act of 1964, sections 12 and 15 of the Age Discrimination in Employment Act of 1967, section 6(d) of the Fair Labor Standards Act of 1938, section 501 of the Rehabilitation Act of 1973, and "the provisions of any law, rule, or regulation prohibiting discrimination on the basis of marital status or political affiliation."  5 U.S.C. § 2302(d).  Each of the enumerated statutes contains its own grant of jurisdiction.[1]

If Plaintiffs were correct that a specific grant of jurisdiction were sufficient to evade the CSRA's otherwise-exclusive remedy scheme, a plaintiff would not require the CSRA's carve out

---

[1] *See* 42 U.S.C. § 2000e-5(f)(3) (for claims under the Civil Rights Act of 1964, "each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter"); 29 U.S.C. § 216(b) (for claims under the Fair Labor Standards Act of 1938, "[a]n action to recover the liability prescribed . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction"); 29 U.S.C. § 633a (for claims under the Age Discrimination in Employment Act of 1967, "[a]ny person aggrieved may bring a civil action in any Federal district court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter"); 29 U.S.C. § 794a(a) (for claims under the Rehabilitation Act of 1973, "[t]he remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 . . . shall be available, with respect to any complaint under section 791 of this title, to any employee or applicant for employment aggrieved by the final disposition of such complaint").

to bring claims under any of the four exempted statutes in federal district court. That Congress considered the carve-out necessary thus refutes Plaintiffs' contention: "a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous." *Clark v. Rameker*, 573 U.S. 122, 131 (2014) (citation omitted). Indeed, "[w]hen a statutory construction 'render[s] an entire subparagraph meaningless,'" as Plaintiffs' would here, "the canon against surplusage applies with special force." *Pulsifer v. United States*, 601 U.S. 124, 143 (2024) (quoting *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 128 (2018)).

Plaintiffs respond (Opp. 31) that Congress had no need to exempt claims that challenge adverse personnel decisions under the Privacy Act because those claims fall outside the CSRA's scope. This reasoning is both circular and wrong. It is circular because it assumes the outcome that this analysis is intended to determine—whether Privacy Act claims directed at adverse personnel actions fall within the scope of the CSRA. And it is wrong because the Supreme Court has made clear that the CSRA provides the exclusive framework for challenges to adverse personnel actions brought by covered employees. Indeed, in *U.S. v. Fausto*, the Court characterized as "inherently implausible" the contention that "pre-CSRA remedies" for covered employees "were not meant to be affected by the" CSRA. 484 U.S. 439, 451 (1988). When invoked by a covered employee to challenge a covered personnel action, the Privacy Act is one such pre-CSRA remedy. It was therefore affected by the CSRA's exclusive review scheme, and Congress's decision not to exempt such claims from the scope of the CSRA's exclusive review scheme forecloses jurisdiction here.

c. For similar reasons, the D.C. Circuit's decision in *Lucas v. Am. Fed'n of Gov't Emps.*, 151 F.4th 370 (D.C. Cir. 2025), undermines Plaintiffs' position. The D.C. Circuit in that case addressed claims under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities

Act (ADA), and the Fair Labor Standards Act (FLSA). *Id.* at 374. The district court dismissed all three claims as precluded by the CSRA, and the D.C. Circuit reversed the dismissal as to the Title VII and ADA claims. *Id.* The D.C. Circuit's reasoning illustrates why this Court lacks jurisdiction over Plaintiffs' Privacy Act claims—because they are far more analogous to the FLSA claims that were correctly dismissed than the Title VII or ADA claims that could be brought in district court.

For one, the Privacy Act is not an anti-discrimination statute, and Plaintiffs here therefore cannot avail themselves of "the norm of overlapping remedies for discrimination" that the D.C. Circuit found critical to exercising jurisdiction over the Title VII and ADA claims in *Lucas*. *Id.* at 379. Moreover, although "the CSRA explicitly preserved federal employees' ability to pursue overlapping remedies when they sue their employers for discrimination," *id.* at 389, it does no such thing for claims under the Privacy Act, *supra* pp. 4-6. To the contrary, even Plaintiffs concede (Opp. 7) that "[t]he CSRA does not mention the Privacy Act." And the concerns animating CSRA preclusion carry particular force in the context of the Privacy Act: like the Back Pay Act, a claim brought under the Privacy Act to challenge an adverse personnel decision "could conceivably apply to any employment-related dispute," so it is "obvious" that permitting such claims in district court "'would undermine' the CSRA's remedial scheme." *Lucas*, 151 F.4th at 385; *see also Houlihan*, 909 F.2d at 385. Plaintiffs' Privacy Act claims should therefore be dismissed for lack of subject-matter jurisdiction, just like the FLSA anti-retaliation claim in *Lucas*. *See* 151 F.4th at 390-91 (the FLSA claim cannot avoid preclusion under the "general norm of concurrent administrative and judicial jurisdiction" and falls "clearly within the" reviewing administrative agency's "purview because it wholly concerns the representative conduct of her union, and there is no compelling indication that Congress intended for her to also be able to bring a FSLA claim in district court").

Plaintiffs insist (Opp. 19-20) that the Privacy Act is more analogous to Title VII and the ADA because it is a "specific" rather than "general, catchall" statute. But Plaintiffs overlook *why* the D.C. Circuit assesses specificity: to ensure that aggrieved federal employees are not left with a backdoor "that could cover 'a vast number of cases' that Congress intended to funnel through the CSRA's process of administrative review instead of through district courts." *Lucas*, 151 F.4th at 384. Authorizing challenges under the Privacy Act to adverse personnel decisions would have precisely that effect—virtually every employee aggrieved by an adverse personnel decision could allege that decision was based on a mistake or misunderstanding reflected in some inaccurate or incomplete federal record, and thus bring a Privacy Act claim.[2]

d. Plaintiffs' reliance (Opp. 20) on *Lacson v. DHS*, 726 F.3d 170, 174 (D.C. Cir. 2013), to distinguish *Elgin* is similarly misplaced. The court there explicitly "recognize[d] that Lacson is not invoking our jurisdiction to review the adverse personnel action against him (*i.e.*, his termination)." 726 F.3d at 174; *see also id.* at 176 (emphasizing that "Lacson is not challenging the personnel action in this court"). Here, review of Plaintiffs' removals is the entire point. Those removals are even the subject of the first sentence in Plaintiffs' Complaint: "On April 1, 2025, the U.S. Department of Health and Human Services (HHS or Department) notified thousands of federal workers that they were being terminated." Compl. ¶ 1.

Moreover, because the statute at issue in *Lacson*, 49 U.S.C. § 46110(a), "is so narrowly drawn," the court did "not worry that hearing Lacson's case would permit employees to 'circumvent the CSRA's requirements and limitations' in a vast number of cases." 726 F.3d at

---

[2] For this reason, Plaintiffs' observation that the Privacy Act gives "detailed instructions" to agencies to "manag[e] their records," Opp. 19 (quoting *Doe v. Chao*, 540 U.S. 614, 618 (2004)), is beside the point. The CSRA does not preclude jurisdiction over *all* Privacy Act claims—it precludes jurisdiction over only those claims that, at bottom, are "challenge[s] to CSRA-covered employment action brought by CSRA-covered employees." *Elgin*, 567 U.S. at 22.

176 (cleaned up).  That worry is very much present here because any aggrieved employee might be able to point to some inaccuracy or incomplete federal record as the basis for an adverse personnel decision and thus bring a Privacy Act claim.  *Supra* p. 4.  *Lacson* also emphasized that Congress granted jurisdiction through § 46110(a) "a full 25 years after the CSRA was enacted." 726 F.3d at 176.  The Privacy Act, of course, predates the CSRA, and the Supreme Court in *Fausto* made clear that "the proposition that 'pre-CSRA remedies . . . were not meant to be affected by the CSRA is inherently implausible.'"  *Id.* at 177 (quoting *Fausto*, 484 U.S. at 451) (cleaned up).

e.  Plaintiffs also contend (Opp. 20-21) that *Elgin* is inapposite because the claims in that case "were merely being channeled to another forum."  But the same is true here.  Plaintiffs do not dispute that their claims boil down to "redress for allegedly unlawful terminations," which the D.C. Circuit has held is "the heartland of CSRA coverage."  *Nat'l Treasury Emps. Union v. Vought*, 149 F.4th 762, 776 (D.C. Cir. 2025) (*NTEU*).[3]  Statute and regulation expressly authorize Plaintiffs to seek relief for their removals from the MSPB, *see* 5 U.S.C. § 7511(a)(1); 5 C.F.R. § 351.901.

At the core of both *NTEU* and *Elgin* is the simple proposition that plaintiffs must proceed through the CSRA where their claims are "predicated on loss of employment," *NTEU*, 149 F.4th at 770, or seek "review of adverse employment actions," *Elgin*, 567 U.S. at 11-12.  That is because "[a] challenge to removal is precisely the type of personnel action regularly adjudicated by the MSPB and the Federal Circuit within the CSRA scheme."  *Id.* at 22.  Because Plaintiffs' Privacy Act claims are based on their loss of employment and ultimately seek review of adverse personnel decisions, they must therefore proceed through the CSRA.

---

[3] Plaintiffs attack a strawman when arguing (Opp. 22) that *NTEU* "is no help to Defendants" because the panel in *NTEU* "was not at liberty to overrule *Hubbard* or *Kleiman*."  The Supreme Court in *Elgin* held that CSRA preclusion is jurisdictional and therefore abrogated *Hubbard* and *Kleiman* insofar as either of those decisions can be read to hold otherwise, *infra* pp. 14-17.  *NTEU* merely applied the now-settled *Elgin* framework, as this Court must do here.

Plaintiffs respond (Opp. 20) that the Privacy Act "does not provide a basis for MSPB jurisdiction." True but irrelevant. Plaintiffs' *removals* provide a basis for MSPB jurisdiction. Congress provided that the MSPB may hear "any action which is appealable to the Board under any law, rule, or regulation," 5 U.S.C. § 7701(a), and removals pursuant to a reduction in force action are appealable to the Board, 5 C.F.R. § 351.901; *see also Alder v. Tennessee Valley Auth.*, 43 F. App'x 952, 956 (6th Cir. 2002) (describing a "reduction-in-force decision" as "a fundamental employment claim subject to MSPB review"), *cert. denied*, 537 U.S. 1112 (2003). The Federal Circuit then has exclusive jurisdiction to review MSPB final decisions. 5 U.S.C. § 7703(b)(1).

For this reason, Plaintiffs' concession (Opp. 21 n.6) that the MSPB can adjudicate claims under the "Privacy Act only in the context of other CSRA-related proceedings" is fatal. Other CSRA-related proceedings *are* available here in the form of direct challenges to Plaintiffs' removals before the MSPB. One component of those challenges could be Plaintiffs' claims under the Privacy Act, and the MSPB routinely adjudicates asserted violations of the Privacy Act that are material to or directly implicated in matters over which the MSPB has jurisdiction. *See* Mot. 17 (collecting authorities); *see also Thornhill v. Dep't of Army*, No. DC07529010253, 1991 WL 205441 (M.S.P.B. Oct. 7, 1991) (finding no violation of the Privacy Act following appellant's removal from his position); *Smith v. Dep't of Transp.*, No. AT 0752 05 0901 I 2, 2007 WL 1641891 (M.S.P.B. June 5, 2007) (finding removal was appropriate because employee violated the Privacy Act); *Gill v. Dep't of Def.*, No. DC-0752-00-0459-I-1, 2002 WL 1473163 (M.S.P.B. July 3, 2002) (holding agency failed to prove violation of the Privacy Act by removed employee). Plaintiffs' own authority confirms as much. In *Young v. USPS* (cited at Opp. 21), the MSPB explained that it "has . . . considered issues involving the Privacy Act where the Act is implicated in matters over which the Board has jurisdiction." 2010 WL 2016529, at *13 (M.S.P.B. May 21, 2010).

10

Thus, as the Supreme Court explained in *Elgin* when rejecting the same argument recycled here, "the particular circumstances of Elgin's case do not demonstrate that the MSPB will dismiss an appeal that is otherwise within its jurisdiction merely because it lacks the authority to decide a particular claim." 567 U.S. at 21. That reasoning applies with full force here: if Plaintiffs were correct that their removals were unlawful because they followed from violations of the Privacy Act, the MSPB could adjudicate those claims and remedy Plaintiffs' injuries, including through reinstatement, backpay, and attorney's fees. *See* 5 U.S.C. §§ 1204(a)(2), 7701(g). And the Federal Circuit would ensure that review of those determinations occurred in an Article III court pursuant to 5 U.S.C. § 7703(b)(1). *See, e.g., Knight v. Department of Def.*, 332 F.3d 1362, 1364 (Fed. Cir. 2003) (directing the MSPB to resolve a case challenging a RIF demotion under the RIF regulations). Indeed, the Federal Circuit would ensure that review is available even if the MSPB declined to review the Privacy Act component of Plaintiffs' challenge because "the Federal Circuit has never held, in an appeal from agency action within the MSPB's jurisdiction, that its authority to decide particular legal questions is derivative of the MSPB's authority." *Elgin*, 567 U.S. at 18.

At most, then, Plaintiffs can argue that they are unable to bring standalone Privacy Act claims before the MSPB. But that does not establish that Plaintiffs lack "all meaningful judicial review," which is the relevant standard under *Elgin*. *Id.* at 15; *see also Miriyeva v. U.S. Citizenship & Immigr. Servs.*, 436 F. Supp. 3d 170, 185 (D.D.C. 2019) ("[T]here is no requirement that the alternative remedy be identical."), *aff'd*, 9 F.4th 935 (D.C. Cir. 2021). And that holds true even though the MSPB may award different relief (reinstatement, backpay, and attorneys' fees) than a district court reviewing a standalone Privacy Act claim for monetary damages. The D.C. Circuit has held in the context of the Federal Service Labor Management Relations Statute—a subpart of the CSRA scheme that addresses federal employee union claims, *see* Mot. 4—that plaintiffs are

"required to raise their challenges through the" exclusive CSRA "scheme even if that made it *impossible* to obtain particular forms of review or relief." *AFGE*, 929 F.3d at 756; *see also* Mot. 16. *Elgin* therefore provides the appropriate framework for assessing CSRA preclusion here.[4]

### 2. As applied in *Elgin*, the *Thunder Basin* factors foreclose jurisdiction.

Applying the *Thunder Basin* factors to Plaintiffs' claims can yield only one result: the CSRA forecloses jurisdiction because those claims, at bottom, challenge adverse personnel decisions that fall within the exclusive scope of the CSRA. *See* Mot. 15-17.

To start, there can be no serious dispute that Congress intended the CSRA to preclude challenges to adverse personnel decisions. The Supreme Court held as much in *Elgin*: "Given the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions, it is fairly discernible that Congress intended to deny such employees an additional avenue of review in district court." 567 U.S. at 11–12. For this reason, "*Elgin* is both binding and conclusive as to the step one inquiry" under *Thunder Basin*. *Abramowitz v. Lake*, No. 1:25-CV-887-RCL, 2025 WL 2480354, at *6 (D.D.C. Aug. 28, 2025).

Plaintiffs respond (Opp. 32) that "the CSRA would have addressed the Privacy Act explicitly if Congress intended to remove the Privacy Act's explicit grant of jurisdiction." But the question is not whether the CSRA forecloses all claims under the Privacy Act—it does not, of course. Rather, the question is whether it is "fairly discernible" based on the "CSRA's text,

---

[4] Plaintiffs also argue that the *Elgin*/*Thunder Basin* analysis is "unhelpful" because the Government has argued that the Privacy Act can itself constitute a comprehensive remedial scheme. *See* Opp. 32 n.12 (citing Defs.' Br. at 12, *Alliance for Retired Americans v. Bessent*, No. 1:25-cv-00313 (D.D.C. May 5, 2025), ECF No. 65). There is no inconsistency: when a plaintiff challenges an adverse personnel decision covered by the CSRA, the CSRA provides the exclusive comprehensive remedial scheme. But *Alliance* was not brought by federal employees to challenge personnel decisions; it was brought by private citizens to challenge "disclosure of personal and financial information." Compl. ¶ 1, No. 1:25-cv-00313 (D.D.C. Feb. 3, 2025), ECF No. 1. Unlike Plaintiffs' claims here, that case strikes at the heartland of the Privacy Act.

structure, and purpose" that Congress precluded challenges brought under the Privacy Act to adverse personnel decisions like those brought by Plaintiffs here. *Elgin*, 567 U.S. at 11–12. And *Elgin* already answered that question in the affirmative: challenges by CSRA-covered employees to CSRA-covered employment action fall within the CSRA's exclusive scope. *Id.*

The three *Thunder Basin* factors that assess whether the claims are "of the type Congress intended to be reviewed within [the] statutory structure," *Thunder Basin*, 510 U.S. at 207, also uniformly support dismissal. The first factor is whether "precluding district court jurisdiction" would "'foreclose all meaningful judicial review,'" *Elgin,* 567 U.S. at 15. As explained *supra* p. 10, the MSPB routinely adjudicates Privacy Act claims when material to the resolution of challenges to adverse personnel decisions brought by CSRA-covered individuals. Plaintiffs' Privacy Act claims fall squarely within that category—indeed, an assessment of the sufficiency of their Privacy Act claims necessarily entails an assessment of the propriety of Plaintiffs' separations, including whether those separations were caused by inaccurate personnel information.

The second factor is whether the claim is "wholly collateral to the statute's review provisions." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 186 (2023). Again, *Elgin* has already resolved this question in Defendants' favor: "[a] challenge to removal is precisely the type of personnel action regularly adjudicated by the MSPB and the Federal Circuit within the CSRA scheme." 567 U.S. at 22. Plaintiffs respond (Opp. 33) that this factor nonetheless favors Plaintiffs because "the Privacy Act and CSRA are 'complementary.'" Although some claims under the Privacy Act may indeed be "complementary" to the CSRA's review scheme, Plaintiffs here bring claims that directly challenge adverse personnel actions. These claims strike at the heartland of the CSRA's exclusive statutory scheme and are therefore not collateral. *See* Mot. 16.

The third and final factor—whether the claim is "outside the agency's expertise," *Axon*, 598 U.S. at 186—also supports dismissal. As Defendants explained, the MSPB is the adjudicative body best situated to address the propriety of Plaintiffs' removals, which is a central element of Plaintiffs' Privacy Act claims. *See* Mot. 17. Indeed, even Plaintiffs concede (Opp. 21 n.6) that the MSPB addresses "the Privacy Act . . . in the context of other CSRA-related proceedings," ensuring that there will be no deficiency in expertise.

Plaintiffs nonetheless assert (Opp. 33) that adjudicating their "claims will require significant fact-finding and intensive statutory analysis." But Plaintiffs identify no disputed questions of statutory construction that only an Article III court can be trusted to answer. And, in any event, the MSPB is well-equipped to interpret statutes implicating adverse personnel decisions considering it administers the CSRA, which "established a comprehensive system for reviewing personnel action taken against federal employees," *Fausto,* 484 U.S. at 455. The MSPB also has at least as much expertise as district courts in overseeing fact-finding concerning allegedly unlawful removals given that is the MSPB's primary purpose. *See Elgin*, 567 U.S. at 22-23 (MSPB possesses special expertise on "questions unique to the employment context"). Thus, the *Thunder Basin* factors all establish that Plaintiffs' claims are "the type that Congress intended to be reviewed within the CSRA scheme," *Elgin*, 567 U.S. at 15, precluding district court jurisdiction.

## B. D.C. Circuit precedent does not authorize Plaintiffs to use the Privacy Act as an end-run around the CSRA's exclusive remedy scheme.

Ignoring *Elgin*, Plaintiffs' assert (Opp. 13-17) that the D.C. Circuit authorized district courts to exercise jurisdiction over Privacy Act claims that challenge adverse personnel decisions otherwise subject to the CSRA's exclusive review scheme in *Hubbard v. U.S. E.P.A. Adm'r*, 809 F.2d 1, 4 (D.C. Cir. 1986), and *Kleiman v. Dep't of Energy*, 956 F.2d 335, 338 (D.C. Cir. 1992). Neither authority can carry the weight Plaintiffs place on it, particularly because both decisions

predate the Supreme Court's unequivocal holding in *Elgin* that the CSRA provides the exclusive scheme by which covered federal employees may challenge adverse personnel decisions.

Start with *Hubbard*. As Defendants explained (Mot. 20 n.4), that opinion is far from clear on whether the CSRA serves as a jurisdictional or merits-based bar to Privacy Act claims challenging federal personnel decisions within the exclusive scope of the CSRA. Indeed, the D.C. Circuit repeatedly framed its concern that Privacy Act claims not serve as an end-run around the CSRA review scheme in jurisdictional terms, emphasizing that "Congress specifically chose to oust the district courts of jurisdiction to review government personnel practices," and instructing that "it would be anomalous to construe the pre-existing Privacy Act to grant the district court power to do indirectly that which Congress precluded directly." 809 F.2d at 5; *see also id.* ("[T]he obvious need to accommodate the two statutory schemes requires the district courts to carefully analyze the asserted causation link to be certain they are not exceeding their jurisdiction.").[5]

Indeed, *Hubbard* reiterated that "the Privacy Act was not intended to shield federal employees from the vicissitudes of federal personnel management decisions." *Id.* (quoting *Albright v. United States*, 732 F.2d 181, 190 (D.C. Cir. 1984)) (cleaned up). And in affirming the dismissal, the D.C. Circuit held that "[a]lthough Hubbard strains to fit his case within the boundaries of the Privacy Act, his complaint really alleges only a wrongful personnel decision, not an invasion of privacy." *Id.* So too here. The D.C. Circuit's reasoning in *Hubbard*—applied within the framework that the Supreme Court subsequently set out in *Thunder Basin* and *Elgin*—

---

[5] Notably, Chief Judge Wald concurred in *Hubbard* to express her disagreement with the panel on this very point. *See Hubbard*, 809 F.2d at 13 (Wald, C.J., concurring) ("the majority opinion seeks to initiate . . . a presumption of nonapplication in employee disputes that will deprive th[e] [Privacy] Act of its intended effect"). The panel majority (which included then-Judge Scalia) evidently disagreed that this was an undesirable effect. To the contrary, Justice Scalia emphasized when authoring the majority opinion for the Supreme Court two years later in *Fausto* that it was undisputed "that competitive service employees, who *are* given review rights by [the CSRA], cannot expand these rights by resort to pre-CSRA remedies," 484 U.S. at 450 n.3.

therefore counsels *against* authorizing Plaintiffs to evade the CSRA's exclusive review scheme merely by challenging adverse personnel decisions under the Privacy Act.

To be sure, *Kleiman* subsequently directed dismissal on non-jurisdictional grounds of Privacy Act claims that challenged personnel actions covered by the CSRA's exclusive remedy scheme.  After explaining that it "refuse[s] to allow 'the exhaustive remedial scheme of the CSRA' to be 'impermissibly frustrated' by granting litigants, under the aegis of the Privacy Act or otherwise, district court review of personnel decisions judicially unreviewable under the CSRA," the D.C. Circuit nonetheless reasoned that a dismissal for lack of subject-matter jurisdiction was improper because "plaintiff's well-pleaded complaint determines whether his suit 'arises under' the laws of the United States for jurisdictional purposes."  956 F.2d at 53 (citation omitted).  While the first half of that analysis remains apt, *Thunder Basin* and *Elgin* eviscerate the conclusion that federal-question jurisdiction is available for challenges to personnel decisions.  *See Elgin*, 567 U.S. at 10-11 (explaining that Congress precludes statutory subject-matter jurisdiction by creating an alternative statutory review scheme).   Tellingly, even Plaintiffs do not rely on the theory of jurisdiction adopted in *Kleiman*—that federal-question jurisdiction exists pursuant to 28 U.S.C. § 1331—and instead assert that statutory subject-matter jurisdiction rests on 5 U.S.C. § 552a(g)(1), the Privacy Act's specific grant of subject-matter jurisdiction.  *See* Opp. 20.

Accordingly, insofar as either *Kleiman* or *Hubbard* can be read to instruct district courts to exercise jurisdiction over Privacy Act claims challenging adverse personnel decisions that fall within the exclusive scope of the CSRA's remedial scheme, that teaching does not survive *Elgin*'s holding that, "[g]iven the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions, it is fairly discernible that Congress intended to deny such employees an additional avenue of review in district court."  567 U.S. at 11-

16

12.  In light of *Elgin*, then, D.C. Circuit precedent that could be read to authorize Privacy Act challenges to adverse personnel decisions within the scope of the CSRA has been abrogated.  *See Dellums v. United States Nuclear Regulatory Comm'n*, 863 F.2d 968, 978 n. 11 (D.C. Cir. 1988) ("[A] circuit precedent eviscerated by subsequent Supreme Court cases is no longer binding.").[6]

Plaintiffs also cite (Opp. 14-17) a handful of cases in which courts in this District and the D.C. Circuit have exercised jurisdiction over Privacy Act claims directed towards adverse personnel decisions.  Many of those decisions predate *Elgin* and have therefore been abrogated insofar as they could be read to authorize jurisdiction over Plaintiffs' claims here.  *See, e.g.*, *Feldman v. C.I.A.*, 797 F. Supp. 2d 29, 45 (D.D.C. 2011); *Doe P v. Goss*, 2007 WL 106523, at *9–10 (D.D.C. Jan. 12, 2007).  Others did not even consider whether the CSRA, as construed by the Supreme Court in *Elgin*, precludes subject-matter jurisdiction over challenges to adverse personnel decisions under the Privacy Act.  *See, e.g.*, *Ashbourne v. Hansberry*, No. CV 12-1153 (BAH), 2014 WL 12666716, at *1 (D.D.C. Sept. 3, 2014) (making no reference to CSRA preclusion).  Any "drive-by jurisdictional rulings" implicit in those courts' exercise of jurisdiction "have no precedential effect."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998).

## C.  Plaintiffs' repeal-by-implication analysis is irrelevant.

Plaintiffs also advance a convoluted argument (Opp. 22-31) about how the CSRA should not be read to repeal the Privacy Act by implication.  This analysis misses the point entirely.

*First*, Plaintiffs apply the wrong legal test.  None of Plaintiffs' cases address preclusion by administrative channeling—*i.e.*, where "a statutory scheme of administrative review followed by

---

[6] Indeed, Defendants are aware of no decision postdating *Elgin* in which *any* federal appellate court considered CSRA preclusion and nonetheless exercised jurisdiction over a Privacy Act claim directed at covered personnel action.  *See, e.g.*, *Manivannan*, 42 F.4th at 173 (Privacy Act claim pertaining to "personnel action" is "subject to the CSRA"); *Doe v. F.D.I.C.*, 545 F. App'x 6, 8 (2d Cir. 2013) ("Because Doe's Privacy Act claims fall within the definition of a 'prohibited personnel action,' the CSRA dictates that Doe may not pursue her claims in federal court.").

judicial review in a federal appellate court precluded district court jurisdiction over a plaintiff's statutory and constitutional claims." *Elgin*, 567 U.S. at 9. Preclusion by administrative channeling is subject to a distinct analysis as the Supreme Court has repeatedly held, starting in *Thunder Basin*.

There, the Court concluded that the "Mine Act's comprehensive enforcement structure, combined with the legislative history's clear concern with channeling and streamlining the enforcement process, establishes a 'fairly discernible' intent to preclude district court review in the present case." 510 U.S. at 216. And as the Court subsequently held in *Elgin*, those same considerations establish that the CSRA creates such an exclusive and preclusive scheme for covered employees challenging covered personnel actions: "[C]ompetitive service employees, who are given review rights by" the CSRA, "'cannot expand these rights by resort to' judicial review outside the CSRA scheme." 567 U.S. at 11 (quoting *Fausto*, 484 U.S. at 450 n.3). Most recently, the Supreme Court in *Axon*, 598 U.S. at 186, applied the same *Thunder Basin* framework to hold that certain structural constitutional challenges to the agency adjudication process itself may be brought directly in federal district court. *See also Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010).

In all of those cases, the Supreme Court considered whether a specific statutory review scheme displaced some other grant of jurisdiction over a particular type of claim. If the claim brought was "of the type" that an exclusive statutory scheme "reach[es]," then district courts lack jurisdiction. *Axon*, 598 U.S. at 196 (quoting *Thunder Basin*, 510 U.S. at 212). In none of those cases did the Court conduct the repeal-by-implication or conflicts analysis that Plaintiffs urge here. Nor did the D.C. Circuit conduct this analysis when determining whether the CSRA precluded jurisdiction over a challenge to a particular TSA order in *Lacson*, 726 F.3d at 408, one of Plaintiffs' principal authorities (albeit distinguishable for the reasons explained *supra* pp. 8-9). All that is for

good reason—the repeal-by-implication analysis has no relevance to preclusion by administrative channeling.

Plaintiffs' misplaced reliance (Opp. 22, 24-29) on *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 111–112 (2014), illustrates the point. The Supreme Court there analyzed the "alleged preclusion of a *cause of action* under one federal statute by the provisions of another federal statute." *Id.* (emphasis added). But Defendants here do not contend that the CSRA precludes a cause of action under the Privacy Act. Rather, Defendants argue that federal employees disputing adverse personnel decisions within the CSRA's scope must first present those challenges to the MSPB, including when those challenges invoke the Privacy Act. That assessment is governed by *Thunder Basin* and its progeny.

*Second*, Plaintiffs' conflicts and repeal-by-implication analysis is irrelevant because Defendants do not ask this Court to hold that the Privacy Act has been repealed. The Privacy Act remains available to plaintiffs that are, for example, actually aggrieved by the government's invasion of privacy rather than by an adverse personnel decision. But a case that "really alleges only a wrongful personnel decision, not an invasion of privacy," "strains to fit . . . within the boundaries of the Privacy Act." *Hubbard*, 809 F.2d at 5. Plaintiffs here do not allege any invasion of privacy and instead seek to use the Privacy Act as an end-run around the CSRA's exclusive scheme for challenges to adverse personnel decisions. Defendants therefore "read the Privacy Act without doing violence to the" CSRA by, like the D.C. Circuit in *Kleiman*, declining to extend the Privacy Act to authorize "a collateral attack on the original personnel decision, bypassing the 'exhaustive remedial scheme' provided by Congress." 956 F.2d at 52. Defendants' construction merely updates *Kleiman* by employing it within the framework that the Supreme Court created a few years later in *Thunder Basin* and then applied to the CSRA in *Elgin*.

19

For this reason, Plaintiffs' recitation of the differences between the Privacy Act and the CSRA misses the mark. Of course, federal district courts may exercise jurisdiction over claims that are actually directed at "what records the government collects about people and how it must maintain those records." Opp. 26. The problem for Plaintiffs is that their claims are "predicated on loss of employment," *NTEU*, 149 F.4th at 770, and "really allege[] only a wrongful personnel decision," *Hubbard*, 809 F.2d at 5. Those claims thus fall within the CSRA's exclusive scheme.

## II.    In the alternative, Plaintiffs fail to state claims under the Privacy Act.

### A.    Plaintiffs' allegations do not establish a causal link between any Privacy Act violation and Plaintiffs' removals in light of materials subject to judicial notice.

If this Court exercises jurisdiction, Plaintiffs' Privacy Act claims should be dismissed because Plaintiffs' allegations do not establish a causal link between the alleged violations of the Privacy Act and Plaintiffs' removals in light of materials subject to judicial notice. *See* Mot. 21-28. None of Plaintiffs' responses is availing.

*First*, Plaintiffs argue (Opp. 34-35) that the close scrutiny of causation that the D.C. Circuit has directed for Privacy Act claims should not take place at the pleading stage. But the Circuit characterized that close scrutiny as the critical means by which the Privacy Act is reconciled with the CSRA, *see Hubbard*, 809 F.2d at 5, and has directed that those statutes be reconciled at the motion-to-dismiss stage, *see Kleiman*, 956 F.2d at 53. Indeed, *Hubbard* and *Kleiman* are the very cases that Plaintiffs claim confer jurisdiction over their claims. But Plaintiffs cannot have it both ways: either *Kleiman* and *Hubbard*'s placement of an assessment of CSRA preclusion within the merits analysis has been abrogated by *Thunder Basin* and *Elgin* (in which case this Court lacks statutory subject-matter jurisdiction) or it remains good law (in which case this court must reconcile the Privacy Act and CSRA at the pleading stage through the searching analysis of causation that the D.C. Circuit requires).

*Second*, Plaintiffs argue (Opp. 35-36) that this Court cannot take judicial notice of the contents of the HHS website that explain why the personnel actions at issue here did not turn on the contents of any personnel record. But "[c]ourts in this jurisdiction have frequently taken judicial notice *of information posted on official public websites* of government agencies," not merely the existence of those websites. *See Pharm. Rsch. & Mfrs. of Am. v. HHS*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014) (emphasis added) (collecting authorities). Indeed, the court in that case took judicial notice of information contained on a "Frequently Asked Questions page," the same format of the information at issue here. *Id.* Likewise, in *Dastagir v. Blinken*, the Court took judicial notice of a fact—that the State Department had suspended visa services in response to the COVID-19 pandemic—at the motion to dismiss stage by reference to an official government website. *See* 557 F. Supp. 3d 160, 163 n.3 (D.D.C. 2021) ("The Court takes judicial notice of information posted on official government websites without transforming the Government's motion into one for summary judgment."). And these cases are not outliers. *See, e.g.*, *Arab v. Blinken*, 600 F. Supp. 3d 59, 63 (D.D.C. 2022) (taking notice of the same based on government website).[7]

On the substance of the materials subject to judicial notice, Plaintiffs aver (Opp. 36) in a conclusory manner that the website's claim "is contrary to the facts of the complaint . . . and may be inconsistent with OPM regulations." Neither assertion is plausible. To start, the paragraph Plaintiffs cite in support merely alleges that Plaintiff Adams's RIF notice was inaccurate because

---

[7] Tellingly, Plaintiffs' principal authority, *Jingjing Liu v. Mayorkas*, 2021 WL 2115209, at *4 (D.D.C. May 25, 2021), is an unpublished decision that runs contrary to settled precedent in this Circuit. *See Cannon v. D.C.*, 717 F.3d 200, 205 n. 2 (D.C. Cir. 2013) (taking judicial notice of contents of document posted on the D.C. government website); *Baker v. Islamic Republic of Iran*, No. CV 22-2765 (BAH), 2025 WL 2480075, at *4 (D.D.C. Aug. 28, 2025) ("judicial notice is appropriately taken of information on official public government websites" including "information regarding Iran's status as a designated state sponsor of terrorism, and terrorist designations of the Afghan Taliban, the Haqqani Network, al-Qaida and their . . . members."); *Da Costa v. Immigr. Inv. Program Off.*, 643 F. Supp. 3d 1, 13 (D.D.C. 2022) (crediting at motion to dismiss stage statement on government website concerning "Questions and Answers" for a particular visa).

it stated "[a]ll employees in your competitive area will be separated" when some employees in the "Office of Grants Management-" competitive area allegedly were not removed. *See* Compl. ¶ 116. As Defendants explained (*see* Mot. 25), Adams does not dispute that her competitive area is the Office of Grants Management. And Plaintiffs do not dispute that the alleged inaccurate statement—that "[a]ll employees in [her] competitive area will be separated," *id.* ¶ 116—was neither inaccurate (because competitive area is also determined by geographic location) nor personnel information that could give rise to a Privacy Act claim. Plaintiffs' conclusory allegations to the contrary are therefore not sufficient to state a claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). Plaintiffs also provide no explanation whatsoever as to why HHS's RIF violates OPM regulations. And even if they had, a violation of OPM regulations is not relevant to whether Plaintiffs have asserted a claim under the Privacy Act.

Plaintiffs also contend (Opp. 36) that the statements made on the website should not be credited because they are "self-serving." But "[t]he presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Latif v. Obama*, 666 F.3d 746, 748 (D.C. Cir. 2011) (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007)). This is precisely why government records may be subject to judicial notice in the first place. *See id.* (affording government reports introduced into evidence the presumption of regulatory). Plaintiffs offer no basis to overcome that presumption here.

*Third*, Plaintiffs submit (Opp. 36-38) that they have an additional causation theory that "inaccurate records led to their offices being cut or reduced," even if the inaccurate records did not lead to any particular employee being removed. But this argument merely repackages their claims that removals were the result of allegedly inaccurate performance ratings. As Defendants

22

explained, these allegations are not plausible in light of HHS's statements (including those made before the removals even took place) that it was undergoing a significant reorganization of the Department that would result in the closure of entire regional offices "without regard to retention standing." *See* Mot. 21-22. For this reason, "[i]n most cases, entire competitive areas are being abolished in this RIF," such that "employees are being separated without regard to retention standing." *Id.* at 22. And Plaintiffs do not allege any basis to conclude that offices were eliminated based on the composite performance scores of employees in that office.

*Finally*, Plaintiffs acknowledge (Opp. 37-38) that their "matching program claims rise and fall on a similar causation analysis"—whether Plaintiffs' removals "were thus caused by Defendants' failure to verify their records" and "use [of] the flawed records in the first place." As explained *supra*, Plaintiffs fail to plausibly allege any such connection, and their matching claim must be dismissed for that reason. *See* Mot. 27-28.

**B. Plaintiffs do not plausibly allege intentional or willful violations of the Privacy Act.**

Plaintiffs also fail to state a claim under the Privacy Act because they do not plausibly allege that any violations were intentional or willful as required under 5 U.S.C. § 552a(g)(4). *See* Mot. 28-32. Plaintiffs first respond (Opp. 39) that "Defendants are federal agencies that should be aware of the Privacy Act's requirements." But that fact alone is plainly insufficient; if it were otherwise, the intentional or willful requirement would be meaningless because only federal agencies may be liable under the Privacy Act by its terms, *see* 5 U.S.C. § 552a(g)(1).

Plaintiffs note (Opp. 39) that HHS was directed to confirm it had reviewed all personnel data before issuing the RIF notices. But Plaintiffs allege that HHS did precisely that, including by delaying the RIF notices to provide additional time for review. Mot. 30. That does not evince an intentional or willful disregard of the Privacy Act's obligations. *See Sterling v. United States*, 826

F. Supp. 570, 572 (D.D.C. 1993).  And none of Plaintiffs' general allegations (Opp. 40) about "hostility towards federal workers" establishes an intention to violate the Privacy Act.

Plaintiffs also mistakenly excise (Opp. 39-40) Secretary Kennedy's statement from an April 9, 2025 interview in which he said that "it takes too long and you lose political momentum" to suggest that Secretary Kennedy was referring to the review of individual personnel records.  He was not.  Instead, the interviewer asked him why HHS was not reviewing the necessity of each position on a job-by-job level.  *See* CBS News, *RFK Jr.'s First Network TV Interview as HHS Secretary*, https://www.youtube.com/watch?v=o2U0csKvqMY at 17:32 (Apr. 9, 2025).  That has nothing to do with whether HHS reviewed personnel records for inaccuracies.

Moreover, Plaintiffs fail to rebut HHS's corrective action as a powerful indication of the agency's desire to comply with the applicable statutory regime.  In response, Plaintiffs state only (Opp. 40) that HHS rejected the need for widespread reconsideration of the RIF.  That concession merely establishes the absence of willful or intentional violations:  after implementing limited corrections where appropriate, HHS evidently does not believe that significant mistakes were made.  Those corrections thus indicate that any violation of the Privacy Act was at most inadvertent or negligent, not intentional.  *See* Mot. 30 (collecting authorities).

## III.    All individual and non-HHS Defendants must be dismissed.

A.  Under settled D.C. Circuit precedent, individuals are not proper Defendants under the Privacy Act.  *See* Mot. 33-34.  Plaintiffs respond (Opp. 44-45) that individuals sued in their official capacity "become[]" the agency for purposes of litigation, citing inapposite cases brought against state officials under 42 U.S.C. § 1983.  But under binding D.C. Circuit precedent construing the Privacy Act, "no cause of action exists that would entitle" a plaintiff "to relief from [individual defendants]."  *Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006).  That is because the Privacy Act "concern[s] the obligations of agencies as distinct from individual employees in

those agencies." *Id.*; *see also Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 533 n.4 (D.C. Cir. 2015) (affirming *sua sponte* dismissal of "DHS officials" because "the Privacy Act creates a cause of action against only federal government agencies").

B.  Defendants other than HHS and its components should also be dismissed because they are not alleged to have violated the Privacy Act in a manner that caused Plaintiffs' harm.  Mot. 34. Plaintiffs respond (Opp. 43) that OPM, OMB, and DOGE "requested, received, accessed, and reviewed relevant personnel records from HHS."  But that allegation is not sufficient to make OPM, OMB, and DOGE liable for Plaintiffs' claims under § 552a(g)(1)(C) and § 552a(g)(1)(D), both of which require Plaintiffs to causally link *those* agencies' violations of the Privacy Act to Plaintiffs' adverse personnel decisions.  *See Deters v. U.S. Parole Comm'n*, 85 F.3d 655, 657 (D.C. Cir. 1996) (to state a claim under § 552a(g)(1)(C), a plaintiff must show, inter alia, the agency's "reliance on the inaccurate records was the proximate cause of the adverse determination"); *Paige v. DEA*, 665 F.3d 1355, 1358–59 (D.C. Cir. 2012) (to state a claim under § 552a(g)(1)(D), a plaintiff must show, inter alia, that the agency's violation of the Privacy Act had an adverse effect on plaintiff).  Plaintiffs at most allege that HHS's violations of the Privacy Act caused them harm as the agency that terminated their positions.  That is not sufficient to state a claim against OPM, OMB, or any DOGE entity.

## IV.    The declaratory relief claim and class allegations cannot salvage this action.

If this Court finds that it lacks jurisdiction over Plaintiffs' Privacy Act claims or that these Plaintiffs have failed to state a claim under the Privacy Act, it must dismiss the entire action.  Mot. 32-33, 34-35.  Plaintiffs offer no response and have therefore forfeited the argument that either their class allegations or claim under the Declaratory Judgment Act can sustain this lawsuit.  *See U.S. ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 497 (D.C. Cir. 2004) ("[A]rguments that parties do not make . . . are deemed to have been waived.").

Dated: October 22, 2025                    Respectfully submitted,


                                           BRETT A. SHUMATE
                                           Assistant Attorney General

                                           ELIZABETH J. SHAPIRO
                                           Deputy Director, Federal Programs Branch

                                           */s/ Alexander W. Resar*
                                           ALEXANDER W. RESAR
                                           Trial Attorney
                                           United States Department of Justice
                                           Civil Division, Federal Programs Branch
                                           1100 L ST. N.W.
                                           Washington, DC 20005
                                           Tel:  (202) 616-8188
                                           alexander.w.resar@usdoj.gov

                                           *Counsel for Defendants*